E-FILED
Monday, 16 March, 2026  10:43:30 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DIANE WARREN, as Personal Representative of the Estate of CRISTINA KESSLER, deceased, and JEFFREY KESSLER, as Personal Representative of the Estate of JOSEPH KESSLER, deceased, | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | |
| v. | ) | Case No. 25-cv-3091 |
| | ) | |
| NORFOLK SOUTHERN RAILWAY COMPANY, a foreign corporation, CHRISTIAN COUNTY, an Illinois body politic, STONINGTON TOWNSHIP, an Illinois body politic, and NORFOLK SOUTHERN CORPORATION, a foreign corporation, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

This is an action pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, *et seq.* Before the Court are Defendant Stonington Township's Motion to Dismiss Counts IV and VIII of Plaintiff's First Amended Complaint (Doc. 24) and Defendant Christian County's Motion to Dismiss Counts III and VI of Plaintiff's First Amended Complaint (Doc. 26). For the reasons that follow, both motions to dismiss are denied.

## I.    FACTUAL ALLEGATIONS

On April 25, 2024, while traveling through a railroad crossing in Christian County, Illinois, Cristina and Joseph Kessler were struck by a two-car freight train owned and

operated by Defendant Norfolk Southern Railway Company ("Norfolk Southern") resulting in their death. (Doc. 11 at ¶¶ 60, 63, 64). Plaintiffs in this case are the Personal Representatives of the Estates of Cristina and Joseph Kessler. In addition to Norfolk Southern, Plaintiffs name Christian County and Stonington Township as Defendants in the First Amended Complaint.[1] (Id. at ¶¶ 12-13).

Plaintiffs allege Norfolk Southern owned, operated, and/or maintained property located near CR 2300N / TR 63A, Christian County, Illinois, which included a rail line, a railroad crossing, commonly referred to as U.S. DOT Crossing No. 479224Y, and a right of way extending in either direction. (Id. at ¶ 14). At all relevant times, Norfolk Southern maintained control of the right of way extending approximately 50 feet in either direction. (Id. at ¶ 15). The crossing was marked with crossbucks and a yield sign in both directions crossing the railroad tracks. (Id. at ¶ 17). Norfolk Southern performed inspections at or near the crossing at least twice each month. (Id. at ¶ 18). At all relevant times, Norfolk Southern was subject to the "safety requirements" set forth in 625 ILCS 5/18c-7401, including the requirement to "construct, maintain, and operate all of its equipment, track, and other property in this State in such a manner as to pose no undue risk to its employees or the persons or property of any member of the public." (Id. at ¶ 20). The State of Illinois maintained regulations regarding the grade line of highway approaches to railroad

---

[1] After the motions to dismiss were fully briefed, Plaintiffs obtained leave and filed a Second Amended Complaint which adds Norfolk Southern Corporation, Norfolk Southern Railway Company's parent corporation. (Doc. 37). Because the Second Amended Complaint does not change the substance of the counts against Defendants Christian County and Stonington Township in the First Amended Complaint, the motions to dismiss filed by those Defendants remain before the Court. (Text Order of Sept. 30, 2025). The factual allegations are taken from the First Amended Complaint. (Doc. 11).

crossings, Section 1535.204, which specified the tolerable grade changes or deviations within a railroad's right of way. (*Id.* at ¶ 21). The crossing was maintained in violation of Section 1535.204 and sight distances were limited on the approach to the crossing traveling in an eastbound direction. (*Id.* at ¶¶ 23-24). Norfolk Southern had actual knowledge of engineering defects and extra-hazardous conditions that increased the risk of crashes at the crossing but did nothing to remedy those conditions and/or provide adequate protective devices at the crossing. (*Id.* at ¶ 25-33).

Plaintiffs allege crashes between highway vehicles and locomotives occurred at the same crossing in 1975, 1983, and 1993. (*Id.* at ¶ 34). In each of those crashes, the roadway vehicle was traveling eastbound and the train was approaching from the south. (*Id.* at ¶ 35). Each time, the roadway vehicles were traveling at or less than 5 miles per hour at the time of impact. (*Id.* at ¶ 36).

In 2003, the Illinois Commerce Commission ("ICC") proposed closure of the crossing, conditioned on the installation of lights and gates at a nearby crossing, 479223S. (*Id.* at ¶ 37). Following a December 3, 2003 meeting among representatives of the ICC, Norfolk Southern, Christian County, and Stonington Township, Defendants agreed to the proposed closure of the crossing without the need to construct new connecting roads. (*Id.* at ¶ 38-39). After the receipt of a proposed stipulated agreement on January 31, 2008, to proceed with safety improvements including the closure of the crossing, Christian County made an affirmative request to the ICC that the crossing not be closed "until such time as [Christian County] can determine the impacts to the farming community as well as talk to the property owners that would be directly affected by the construction of the

connector roads." (*Id.* at ¶¶ 40-41). While the ICC agreed to safety improvements at two other crossings, it announced on February 13, 2008, that it would "defer pursuing safety improvements" at the crossing "until such time as your office can better determine the impact changes to those crossings will have on surrounding farm operations." (*Id.* at ¶ 42).

At no time between 2008 and 2015 did Christian County or Stonington Township undertake any effort to study the impact of a closure and/or take any action to improve the unsafe condition of the roadway and/or crossing. (*Id.* at ¶¶ 45, 47). Norfolk Southern also did not undertake any action to improve the unsafe condition of the crossing during that timeframe. (*Id.* at ¶ 46).

In May 2015, a locomotive owned and/or operated by Norfolk Southern struck a tractor-trailer truck at the crossing, the fourth reported crash at the crossing. (*Id.* at ¶ 48). As with the earlier crashes, the tractor-trailer truck was traveling in the same direction and at a speed of less than 5 mph and the train was approaching from the south at the time of impact. (*Id.* at ¶¶ 49-50). Plaintiffs allege Defendants knew that the danger posed by this crossing created an unreasonably high risk of catastrophic injury and death including the risk of a derailment given the limited sight distance, frequent use by trucks, vertical alignment of the crossing, the transport of hazardous materials through the crossing, and the presence of a major state highway in close proximity to the crossing. (*Id.* at ¶ 51). In fact, the Norfolk Southern freight train in 2015 was carrying hazardous materials at the time of the crash and the truck ignited in flames immediately after impact. (*Id.* at ¶ 52).

After the 2015 crash, neither Christian County nor Stonington Township undertook any effort to study the impact of a closure or take any action to improve the unsafe condition of the roadway and/or crossing. (*Id.* at ¶¶ 53, 56). Norfolk Southern undertook no action to improve the unsafe condition of the crossing. (*Id.* at ¶ 54). Norfolk Southern never filed a petition to close the crossing or improve the protective devices installed at the crossing, despite having knowledge of the conditions in existence at the crossing and the crash occurring in 2015. (*Id.* at ¶ 55).

In 2017, acting on its own initiative following staff evaluation, the ICC planned future installation of lights and gates at the crossing. (*Id.* at ¶ 57). In 2021, after the ICC requested and received an estimate from Norfolk Southern for the installation of lights and gates at the crossing, the project to install lights and gates was merged into a planned future corridor project for the purpose of saving the railroad money by avoiding redundant work to update railroad circuitry with the installation of each new crossing improvement. (*Id.* at ¶ 58). Between 2017 and 2021, Norfolk Southern undertook no action to request closure of the crossing or petition for immediate improvement of the crossing. (*Id.* at ¶ 59).

On April 25, 2024, Plaintiffs' decedents approached the crossing traveling in an eastbound direction. (*Id.* at ¶ 60). At the time of their approach to the crossing, extra-hazardous conditions existed, including severely restricted sight distance, the angle of approach, the horizontal and vertical alignment of the tracks, and the speed of vehicular and train traffic. (*Id.* at ¶ 62). While traveling at or below 5 mph through the crossing, Plaintiffs' decedents were struck by a two-car freight train owned and operated by

Norfolk Southern approaching from the south. (*Id.* at ¶ 63). They died from injuries sustained in the crash. (*Id.* at ¶ 64).

At the time of her death, Cristina Kessler left her adult sisters, Diane Warren, Susan Smith, and Debbie Ellis, and adult brother Brian Dombrowski, as her surviving next of kin. (*Id.* at ¶ 65). Joseph Kessler left his adult brothers, Jeffrey Kessler and Charles Kessler, as his surviving next of kin. (*Id.* at ¶ 66).

## II.    DISCUSSION

Defendant Stonington Township asks the Court to dismiss Counts IV and VIII, alleging Plaintiffs First Amended Complaint lacks sufficient facts to state a claim for negligence under Illinois law. (Doc. 25). Defendant further asserts that, even if Counts IV and VIII are not factually deficient, the claims must be dismissed because the ICC has exclusive jurisdiction.

Defendant Christian County seeks dismissal of Counts III and VI, alleging it did not owe a duty to the decedents as it neither owned nor maintained the road. (Doc. 27). Defendant also asserts it lacked any authority to do anything to the grade crossing as the ICC has exclusive jurisdiction. Christian County next contends Plaintiffs have not alleged sufficient facts to establish Christian County voluntarily assumed a duty. Finally, Christian County argues immunity under the Illinois Local Governmental and Governmental Employees Tort Immunity Act.

### A. Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). When considering a

motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and drawing all reasonable inferences in plaintiff's favor. *Atlanta Gas Light Co. v. Navigators Ins. Co.*, 164 F.4th 1038, 1046 (7th Cir. 2026). To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing she is entitled to relief and giving defendants fair notice of the claims. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). However, the complaint must set forth facts that plausibly demonstrate a claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the court can reasonably infer that defendants are liable for the misconduct alleged "or, put another way, a story that holds together." *Atlanta Gas Light Co.*, 164 F.4th at 1046 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a claim. *See id.* The complaint must do more than assert a right to relief that is "speculative." *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

### B. Stonington Township's Motion to Dismiss

#### (1) Sufficiency of Factual Allegations

Defendant Stonington Township contends that facts alleged by Plaintiffs are insufficient to state a claim for negligence under Illinois law because it is unclear what Plaintiffs claim Stonington Township did or failed to do or what Plaintiffs suggest it should have done differently. "The elements of a negligence cause of action are [1] a duty owed by the defendant to the plaintiff, [2] a breach of that duty, and [3] an injury [4] proximately caused by the breach." *Scott v. Wendy's Properties*, 131 F.4th 815, 819 (7th Cir.

2025) (applying Illinois law) (citation omitted). Stonington Township alleges Plaintiffs' allegations are vague and consist of little more than "threadbare recitals of the elements of a cause of action" which are only "supported by mere conclusory statements" and do not meet federal pleading standards. (Doc. 25 at 5). Stonington Township suggests Plaintiffs' allegation that it "allowed the roadway to exist in an unreasonable and unsafe condition" is an apparent attempt to only plead facts that are "merely consistent with" the Township's alleged liability and truly "stops short of the line between possibility and plausibility of entitlement to relief'" under *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). (Doc. 25 at 5-6).

In their Response, Plaintiffs note that in addition to the allegations contained within Count IV, the Amended Complaint includes 66 general allegations relating to the crossing, notice, and the conduct of Defendants. While many of those allegations pertain to the conduct of other Defendants, Plaintiffs allege Stonington Township representatives were present at a December 3, 2003 meeting regarding the proposed closing of the crossing. While it was decided in 2008 that safety improvements at the crossing would be deferred, Stonington Township did not take any action between 2008 and 2015 to improve the unsafe condition of the roadway or crossing. Furthermore, Stonington Township took no action following the 2015 crash to improve the unsafe condition of the roadway or crossing.

In Count IV, Plaintiffs allege that Stonington Township was aware of or should have been aware of the four prior crashes, each of which involved vehicles traveling eastbound at a speed at or below 5 mph being struck by trains traveling from the south.

Stonington Township knew or should have known that Defendant Christian County took no action to determine whether safety improvements should be implemented, including closure of the roadway. At no time after 2008, including after a crash in 2015, did Stonington Township take any action to determine whether safety improvements should be implemented.

Plaintiffs further allege Stonington Township committed one or more of the following acts of negligence: (1) failed to remedy a known dangerous condition when Defendant knew or should have known the roadway and/or crossing presented an unreasonable, extra-hazardous risk of injury; (2) failed to take reasonable steps to reduce the likelihood of collision despite this knowledge concerning the roadway and/or crossing; and/or (3) failed to otherwise take appropriate and adequate measures to reduce the likelihood of a collision despite this knowledge of the roadway and/or crossing.

"*Iqbal* makes clear that 'legal conclusions can provide the framework of a complaint' so long as they are 'supported by factual allegations.'" *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679). While the Amended Complaint includes conclusory allegations stating the elements of the claim, it contains more detailed allegations relating to Stonington Township as noted by the Court. When read as a whole, Plaintiffs' Amended Complaint contains enough specific factual allegations to state a plausible claim for negligence and to provide fair notice of the claims to Stonington Township. Thus, the Court denies Stonington Township's motion to dismiss to the extent it is based on insufficient factual allegations.

Page 9 of 17

### (2) ICC's Alleged Exclusive Jurisdiction

Stonington Township next contends, to the extent Plaintiffs are alleging Stonington Township negligently failed to improve, close, and/or alter the railroad crossing, those claims must be dismissed because the ICC has exclusive jurisdiction over the railroads. *See Village of Belle Rive v. Illinois Central Railroad Co.*, 2018 IL App. 170036, 99 N.E.3d 484, 488, 421 Ill. Dec. 240 (5th Dist. 2018) ("[T]he General Assembly 'vested general supervision over all public utilities, including railroads, in the Public Utilities Commission which, by the act of 1921, became the ICC.").

Stonington Township further alleges the ICC's regulation of railroad crossings was vested through the Public Utilities Act, 625 ILCS 5/18C-7401(3). This includes the power to require major alterations, the power to abolish any crossings, and the power to require reconstruction, minor alterations, minor relocations, improvements, and the installation and location of signs, signals, and gates. *Id.* The Illinois Supreme Court noted, "The commission's jurisdiction over all phases of grade crossing regulation has been recognized as plenary and exclusive." *Chicago v. Illinois Commerce Comm.*, 79 Ill.2d 213, 219 (1980). "In the exercise of its power to regulate grade crossings in the interest of public safety, the Commission is vested with wide discretion to determine what the public interests require and what measures are necessary for the protection and promotion of those interests." *ICC*, 79 Ill.2d at 219-20.

Based on the foregoing, Stonington Township alleges it had no authority to make changes to the crossing due to the ICC's exclusive authority and jurisdiction. Thus,

Stonington Township contends Plaintiffs cannot assert a negligence claim against it for failure to maintain, close, or otherwise alter the highway-rail grade crossing.

In their Response, Plaintiffs state they did not bring the action asking the Court to force, compel, or regulate railroad operations. Plaintiffs instead argue that the acts or omissions by Stonington Township and other Defendants resulted in the death of Cristina and Joseph Kessler. In some circumstances, that conduct would include seeking approval from the ICC to make necessary improvements to the crossing in furtherance of their respective duties to act with reasonable care in protection of those using the roadway and encountering the crossing. Plaintiffs contend that, while the ICC has the authority to approve certain safety improvements, that does not mean that the crossing improvements are only initiated by the ICC. Illinois law provides a mechanism by which crossing improvements can be initiated by a complaint before the ICC:

> The Commission shall have power, upon its own motion, or *upon complaint*, and after having made proper investigation, to require the installation of adequate and appropriate luminous reflective warning signs, luminous flashing signals, crossing gates illuminated at night, or other protective devices in order to promote and safeguard the health and safety of the public.

625 ILCS 5/18C-7401(3) (emphasis added). It is clear that, while the ICC may be the entity authorized to require safety improvements at railroad crossings, there is a process by which other entities can make complaints to the ICC to address extra-hazardous, unsafe conditions. Thus, Stonington Township's argument that ICC's exclusive jurisdiction bars Plaintiffs' claims is without merit. Upon accepting the allegations of the Amended Complaint as true and drawing all reasonable inferences in favor of Plaintiffs, the Court

concludes Plaintiffs have alleged a plausible negligence claim against Stonington Township by failing to seek approval from the ICC to make improvements to the crossing that they knew were necessary. Stonington Township's Motion to Dismiss is denied.

### C. Christian County's Motion to Dismiss

In seeking dismissal, Christian County makes many of the same arguments as Stonington Township. Christian County contends the First Amended Complaint fails to meet the pleading standards of *Twombly* and *Iqbal*. Christian County also asserts it did not owe a duty to the decedents as the county neither owned nor maintained the road and it could do nothing to the grade crossing as the ICC has exclusive jurisdiction. Christian County claims Plaintiffs have not alleged facts showing that it voluntarily assumed a duty. Finally, Christian County alleges it is immune under the Illinois Governmental and Governmental Employees Tort Immunity Act.

### (1) Pleading Standards

As the Court previously noted, the Amended Complaint includes 66 general allegations relating to the crossing, notice, and the conduct of Defendants. Paragraphs 110 through 128 specifically pertain to Christian County. Plaintiffs allege Christian County "owned, maintained, possessed, and/or controlled" the roadway upon which Plaintiffs' decedents traveled in approaching the crossing. Christian County allowed the roadway to exist in "an unreasonable and unsafe condition." Christian County was aware of at least four prior crashes at the crossing, which all occurred in the same manner. While Christian County was aware of proposed efforts to improve safety at the crossing, Christian County requested that the crossing not be closed before determining any effects

the safety improvements would have on local farming operations. Based on that request, Christian County was aware that the ICC would defer pursuing any safety improvements at the crossing until the study relating to farm operations. Plaintiffs allege Christian County took no action to study, investigate, and/or otherwise determine whether closure or change in the crossing should be made — even after the 2015 crash at the crossing. Between 2008 and 2024, Christian County made no attempt or effort to alter or close the roadway so as to eliminate the intersection at the crossing. Plaintiffs allege Christian County breached its duty of care by failing to remedy a known dangerous condition or failing to take reasonable steps to reduce the likelihood of a collision, which led to the decedents' fatal crash.

Upon accepting Plaintiffs' allegations as true and drawing all inferences in their favor, the Court finds the allegations in the Amended Complaint are more than sufficient to assert a plausible claim for negligence against Christian County.

### (2) Duty of Christian County

Christian County next alleges it did not owe a duty to the decedents as it neither owned nor maintained the road and could do nothing to the grade crossing due to the ICC's exclusive jurisdiction. Attached to Christian County's response is Group Exhibit 1, a Freedom of Information Act response to Christian County's counsel from the Christian County Highway Department Engineer, which provides that the subject roadway is under the jurisdiction of Stonington Township. (Doc. 27-1). In ruling on a motion to dismiss, the Court may consider—in addition to the allegations of the complaint--

documents that are central to the complaint and information that is subject to judicial notice. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

In response, Plaintiffs allege in the Amended Complaint that Christian County owns the roadway, which bears both a County Road number as well as a Township Road number. Plaintiffs assert full discovery will assist in determining the ownership and possessory interest in the roadway. Moreover, the allegations establish that Christian County committed acts or omissions that had a direct bearing on the conditions that decedents encountered at the time of the fatal crash. Specifically, Christian County's conduct relating to its involvement in the planned safety improvements at the crossing is consistent with duties undertaken as a county engineer under Illinois law, including directing the construction, repair, and maintenance of township roads, 605 ILCS 5/5-205.3, and the approval of traffic-control devices on township roads, 625 ILCS 5/11-304. Significantly, while Stonington Township appeared to agree to close the crossing, Christian County exercised its apparent superior control over the property by overruling the proposed closure. Under Illinois law, "every person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably and probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but is extended to remote and unknown persons." *Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dir.*, 2012 IL 112479, 973 N.E.2d 880, 887-88, 362 Ill.Dec. 484 (2012).

When the allegations of the Amended Complaint are credited, it should have been foreseeable to Christian County that the failure to remedy the conditions at and

approaching the crossing would likely result in injury or death to roadway users. This is particularly true upon considering there were three similar crashes at the crossing before Christian County intervened to prevent the planned safety improvements and one similar crash which occurred after it intervened but before the crash in this case. The Amended Complaint indicates that, if Christian County had not intervened and assumed a duty, according to the agreement between Stonington Township and the ICC, the crossing would have been closed after the lights and gates were installed at the companion crossing, which occurred in July 2009. If this had happened, the fatal crash would not have occurred.

Based on the foregoing and assuming the truth of the allegations in the Amended Complaint, Plaintiffs have plausibly alleged Christian County owed a duty to the decedents. Having determined there exists a general duty of care, the Court need not consider whether Christian County voluntarily undertook a duty to maintain the roadway in a reasonably safe condition or whether the parties and the ICC relied on Christian County's alleged voluntary undertaking. Furthermore, the Court addressed Christian County's argument concerning the ICC's exclusive jurisdiction in considering Stonington Township's motion. For all of these reasons, Christian's County's Motion to Dismiss on this basis is denied.

### (3) Immunity of Christian County

Christian County next alleges dismissal is warranted based on various immunities under the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1/101, *et seq.* Christian County, a local public entity under 745 ILCS 10/1-206,

reiterates that the roadway and grade crossing are not under its jurisdiction or control.

To the extent Plaintiffs are alleging a failure to make an inspection or a negligent

inspection, Christian County contends it is immune. Section 2-105 states:

> A local public entity is not liable for injury caused by its failure to make an
> inspection, or by reason of making an inadequate or negligent inspection,
> of any property, other than its own, to determine whether the property
> complies with or violates any enactment or contains or constitutes a hazard
> to health or safety.

745 ILCS 10/2-105. Section 2-207 of the Tort Immunity Act grants immunity on the same

basis to a public employee. Thus, Christian County alleges even if Plaintiffs have stated

an adequate claim, dismissal is warranted under statutory immunity because inspections

or lack thereof do not result in liability.

A fair reading of Plaintiffs' Amended Complaint indicates Plaintiffs are not

alleging a failure to inspect or a negligent inspection of property. Rather, Plaintiffs allege

Christian County owed a duty to take certain actions or direct certain action be taken on

the property based on an obligation it voluntarily undertook. Plaintiffs further contend

Christian County's acts of intervening in the discussion over planned improvements at

the crossing led to the improvements not occurring before the fatal crash. Christian

County's Motion to Dismiss on immunity grounds is denied.

## III.    CONCLUSION

Upon accepting the allegations of the Amended Complaint as true and drawing

all inferences in Plaintiffs' favor, the Court concludes Plaintiffs have alleged plausible

negligence claims against Defendants Stonington Township and Christian County.

Therefore, Defendant Stonington Township's Motion to Dismiss Counts IV and VIII of

Plaintiffs' First Amended Complaint (Doc. 24) is DENIED. Defendant Christian County's

Motion to Dismiss Counts III and VI of Plaintiffs' First Amended Complaint (Doc. 26) is

DENIED.

ENTER: March 16, 2026

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE